
FILED
May 12, 2015
Third Court of Appeals
Jeffrey D. Kyle
Clerk

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AT AUSTIN

RECEIVED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
5/8/2015 3:55:36 PM
JEFFREY D. KYLE
Clerk

**Appellate Cause   No. 03-14-00516-CR**
**Trial Cause       No. D-14-0081-SA**

MARK ANTHONY SERRANO,

Appellant

v.

THE STATE OF TEXAS,

Appellee.

*On Appeal from the 391ST District Court*
*in Tom Green County, Texas*

## APPELLANT'S BRIEF

Randol L. Stout
Texas Bar No. 19331800
202 W Beauregard
San Angelo, Texas 76903
(325) 658-6816
(325) 658-6114 – Facsimile
rls2700@gmail.com

ATTORNEY FOR APPELLANT
MARK ANTHONY SERRANO

NO ORAL ARGUMENT IS REQUESTED

1

TO THE HONORABLE COURT OF APPEALS:

Mark A. Serrano, Appellant in the above-referenced cause (referred to herein as "Mr. Serrano"), files his Principal Brief pursuant to Texas Rule of Appellate Procedure 38.1. He respectfully shows as follows:

## IDENTITIES OF PARTIES AND COUNSEL

The parties to the judgment from which Appellant appeals are:

1. Mark A. Serrano, Defendant-Appellant; and

2. The State of Texas, Plaintiff-Appellee.

The parties' trial and appellate counsel are:

1. Trial Counsel for Appellant
   Shawntell L. McKillop
   25 West Beauregard Avenue
   San Angelo, TX 76903
   325-939-0027

2. Appeal Counsel for Appellant
   Randol L. Stout
   202 W. Beauregard
   San Angelo, Texas 76903
   325-658-6816

3. For Plaintiff—Appellee The State of Texas (referred to herein as "the State")
   Allison Palmer (51st District Attorney)
   John Best (51st District First Assistant)
   Office of the 51st District Attorney
   124 W. Beauregard
   San Angelo, Texas 76903

# TABLE OF CONTENTS

IDENTITIES OF PARTIES AND COUNSEL ............................................................2

TABLE OF CONTENTS ...................................................................................3

INDEX OF AUTHORITIES ..............................................................................4

STATEMENT OF THE CASE ...........................................................................5

STATEMENT REGARDING ORAL ARGUMENT ................................................5

ISSUES PRESENTED .....................................................................................5

STATEMENT OF FACTS ................................................................................6

SUMMARY OF THE ARGUMENT ..................................................................12

ARGUMENT ...............................................................................................14

    I.  The State violated TCCP Article 15.17 and these violations made Appellant's statement involuntary and therefore Appellant's statement should be suppressed. ..............................................................................16

    II.  The State violated TCCP Article 17 and these violations made Appellant's statement involuntary and therefore Appellant's statement should be suppressed. ..............................................................................23

PRAYER .....................................................................................................33

CERTIFICATE OF COMPLIANCE ...................................................................34

CERTIFICATE OF SERVICE ..........................................................................35

# INDEX OF AUTHORITIES

## UNITED STATES SUPREME COURT

*Bram v. U.S.,* 168 U.S. 532 (1897)

*Miranda v. Arizona,* 384 U.S. 436 (1966)

*Michigan v. Jackson,* 475 U.S. 625 (1986)

*Montejo v. Louisiana,* 556 U.S. 778 (2009)

## TEXAS COURT OF CRIMINAL APPEALS

*Ludwig v. State,* 812 S.W.2d 323 (Texas Crim. App. 1991)

*Ex Parte Stansberry,* 702 S.W.2d 643 (Texas Crim. App. 1986)

*Pecina v. State,* 321 S.W.3d 68 (Texas Crim. App. 2012)

## UNITED STATES CONSTITUION

Fourth Amendment

Fifth Amendment

Sixth Amendment

Eight Amendment

## TEXAS CONSTITUION

Section Nine

Section Ten

Section Thirteen

## TEXAS CODE OF CRIMINAL PROCEDURE

Article 15.17

Article 17.033

Article 17.15

## STATEMENT OF THE CASE

Appellant, Mark Anthony Serrano, was indicted on a third degree felony theft charge in Tom Green County, Texas in January 2014. The indictment was numbered D-14-0081-SA and also alleged two additional enhancement paragraphs against the appellant. Appellant was tried by a jury and found guilty. The jury, after finding the two enhancement paragraphs true, assessed punishment at 25 years in the Texas Department of Corrections. It is from this sentence that Mr. Serrano appeals.

## STATEMENT REGARDING ORAL ARGUMENT

No oral Argument is requested by Appellant.

## ISSUE PRESENTED

The State's violation of Article 15.17, 17.033 and 17.15 of the Texas Code of Criminal Procedure (TCCP) and Sections 9, 10 and 13 of the Texas Constitution had the effect of additional improper State compulsion on Appellant to influence him to make a statement against himself and against his own free will. The circumstances of Appellant's initial arrest, detention and interrogation, while only violations of the TCCP had the effect of subtlety infringing on Appellant's constitutional rights including his Fourth Amendment to be free from unreasonable detention, Eighth Amendment right to free from excessive bail and his Sixth Amendment right to consult with his attorney prior to and during any questioning after State prosecution

has begun. The State's violations also violated the Appellant's rights under the Texas Constitution Section 9 to be free from unreasonable seizures, Section 10 that Appellant shall not be compelled to give witness against himself and has the right of being heard by himself or counsel or both, and Section 13 to be free from excessive bail.

Because Appellant's statement on November 26th, 2013 was given under the influence of improper State compulsion it should be suppressed. I would ask the Court to consider each violation of TCCP individually as making Appellant's statement involuntary, and also consider the impact on the Appellant of the totality of the State's violations of the TCCP.

## STATEMENT OF FACTS

Several truckloads of furniture were stolen from a furniture warehouse in Tom Green County, Texas beginning on or about November 11th, 2013 and continuing for a period of several days. (RR, Vol. 3, 154). The Sherriff's Office began investigating the crime and received a tip from a confidential informant which stated that the person had been at the home of Appellant and thought they had identified the stolen property at his home. (RR, Vol. 3, 173). Based on this tip the investigating officer drove by Appellant's home at 1411 South Irving in San Angelo, Texas to look for any evidence that the stolen property was being stored at the home. The investigating officer observed what he believed to be furniture packing material in the trees and

6

trash cans of Appellant's home. (RR, Vol. 3, 161). The officer made out a probable cause affidavit for issuance of a search warrant to search Mr. Serrano's home. Search warrant M-13-0898 was issued for the search for the stolen furniture at Mr. Serrano's home. (RR, Vol. 3, 163; Vol. 7, 111- 114).

Search warrant M-13-0898 was executed on November 20th, 2013 in the evening and a portion of the stolen furniture was located at Mr. Serrano's residence. (RR, Vol. 3, 165). Mr. Serrano was arrested without an arrest warrant after the search of his home on the evening of November 20th, 2013, a Wednesday at 9 p.m.. For reference this was the week before the Thanksgiving holiday in 2013. The same evening based on information from the confidential informant the investigating officers went to the home of Appellant's mother at 315 N. Milton, San Angelo, Texas to search for more of the stolen furniture. (RR, Vol. 5, 39). Appellant's mother gave consent to search her home and the sheriff deputies located and recovered additional pieces of the stolen furniture in the home and in a storage building behind the home. (RR, Vol. 5, 235).

The next day was Thursday November 21st, 2013 and the investigation into the theft and suspects continued and Appellant was in custody at the county jail on a work day but was not taken before a magistrate. The following day Friday November 22nd, 2013 the Appellant remained in custody at the county jail under arrest without a warrant and was still not taken before a magistrate. At 10:30 a.m.

7

on Saturday; November 23rd, 2013, the defendant was finally taken before a magistrate 61 hours after his initial arrest. (CR, 1). In front of the Magistrate the Appellant requested a court appointed attorney and filled out an affidavit to verify his income and that he qualified for an appointed attorney. (CR, 2). The magistrate checked both boxes under the section titled "Probable Cause and Order Setting Bond", but initialed next to the arrested under warrant as if the box was marked in error. (CR, 1).On the next line below listed as "arrested without warrant" is also checked and sets a bond for Appellant in the amount of $200,000. (CR 1) The request for appointment of an attorney was not faxed to the person authorized to assign counsel in felony cases until November 25th, 2013; 48 hours after the request. (CR 1).

On November 25th, 2013 Shawntell McKillop was appointed as Appellant's attorney. (CR, 2). Appellant could not make the $200,000 bond and remained in custody. Appellant was arrested without a warrant. On November 25th, 2013 the Justice of the Peace issues an arrest warrant for Appellant. (Arrest Warrant M-13-0903). The order appointing Ms. McKillop was not transmitted to her office until the next day on November 26th, 2013 at 11:17 a.m. (CR, 3). On November 26th, 2013 Appellant was taken from the jail by Sheriff's deputies to the Sherriff's office at approximately noon for interrogation . (RR, Vol. 3, 201). Appellant claims that he was told by jailer that he had an attorney visit, which actually turned out to be an

interrogation at the Sheriff's office. (RR, Vol. 3, 201).

The alleged purpose of the interview with Appellant was to identify other co-defendants and their role in the crime. (RR, Vol. 5, 40).

Appellant is read his *Miranda* warnings by Deputy Ibarra before beginning the interrogation and Appellant states he understands his rights. (SE 87, t -2:00). After reading him his rights Deputy Ibarra asks Appellant if he would like to continue and Appellant answers affirmatively. (SE 87, t -2:00). Appellant brings up his bond amount of $200,000 with Deputy Ibarra and Ibarra responds, "tell me why you have that... there is much more to this than you are telling me". (SE 87, t- 26:50). Appellant is uncooperative during the first half of the interrogation and is not willing to make a confession against himself. Deputy Ibarra confronts Appellant of holding back and not being truthful and tells him he has to help himself and Appellant's response is that he is just digging himself deeper if he talks. (SE 87, t- 30:30). Deputy Mellas enters the room and confronts Appellant again saying that Appellant is not going to help himself or the detectives and states that he does not need the Appellant's help in arresting suspect Aaron Wilde. (SE 87, t- 36:00).

Deputy Mellas then tells Appellant that his bond is not set by mistake. (SE 87, t- 36:30). Detective Bloom then explains to Appellant three levels of cooperation and how the message of the Appellant's cooperation will be relayed to the prosecuting attorney. (SE 87, t- 38:40). Deputy Bloom asks Appellant who his

9

attorney is and Appellant responds that he does not have one. (SE 87, t- 40:35). Appellant then asks the deputies if he can start all over. (SE 87, t- 42:00). Appellant is again read his Miranda warnings but not asked if he waives those rights. (SE 87, t- 42:30). Appellant proceeds to make a confession to his involvement in the crime and discusses the roles of the other co-defendants. After making his confession Appellant asks if the deputies think he is being more cooperative and Deputy Mellas responds, "[Y]es that he is going to call the prosecutor for Appellant but that he cannot promise anything." (SE 87, t -1:03:00). At the end of the interrogation Appellant states that he will show Deputy Mellas where codefendant Aaron Wilde lives and Mellas responds that he already knows where Mr. Wilde lives. (SE 87, t - 1:10:45).

On November 27th, 2013 another search warrant for 5159 Schmidt off of Old Christoval Road was prepared for the residence of Aaron Wilde. (RR, Vol. 5, 41-42). A portion of the stolen furniture was located at 5159 Schmidt. (RR, Vol. 5, 43). Later in the investigation a warehouse at 1249 Templin Rd in Tom Green County, Texas was searched with the consent of the owner. (RR, Vol. 5, 49). The majority of the stolen property was recovered from the warehouse on Templin Rd. (RR, Vol. 5, 54). Deputy Mellas attempts to testify concerning who a vehicle of interest belonged to but due to his lack of personal knowledge his response is stricken from the record. (RR, Vol. 5, 67).

Anadee Thomas was working night security at a warehouse not far from the location of the theft in Tom Green County, Texas. (RR, Vol. 5, 180). Ms. Thomas personally knew Aaron Wilde because he did business at the antique warehouse and Ms. Thomas had been personally introduced to Appellant by Mr. Wilde at the antique warehouse. (RR, Vol. 5, 182- 183).On the night of November 13th, 2013 Ms. Thomas was working security for the antique warehouse where she is employed and witnessed a Tahoe pulling a trailer passing by her location several times. (RR, Vol. 5, 190). This occurred at 4:00 a.m. and made Ms. Thomas suspicious so she followed the vehicle. (RR, Vol. 5, 191). After following the Tahoe for a short distance Ms. Thomas saw the Tahoe on the side of the road pulled up next to a black four wheel drive truck with a flatbed trailer attached. (RR, Vol. 5, 192). When on the side of the road the driver of the truck rolls his window down, but Ms. Thomas did not recognize anyone in the truck. (RR, Vol. 5, 194). Ms. Thomas identifies Appellant as being the driver of the Tahoe. (RR, Vol. 5, 195). Ms. Thomas told both vehicles that she had called the police and both the truck and the Tahoe left. (RR, Vol. 5, 196).

Ms. Thomas returned to the Antique warehouse and then saw the Tahoe drive by again and Ms. Thomas decided to follow it. (RR, Vol. 5, 197). Ms. Thomas followed the Tahoe until it parked next to a church in San Angelo, Texas. (RR, Vol. 5, 195). On cross examination Ms. Thomas identifies this location where the Tahoe

11

stopped as the home of Appellant. (RR, Vol. 5, 210). On cross examination Ms. Mckillop attempts to impeach Ms. Thomas with her statement to police about the events on November 13th, 2013in which she does not positively identify the Appellant. (RR, Vol. 5, 207-209) Ms. Thomas testifies that both trailers pulled by the Tahoe and the truck were empty when she witnessed them. (RR, Vol. 5, 213).

The defense introduced four exhibits being defense exhibit two through five. Ms. Reed identifies defense exhibit 2 and 3 as lists of furniture recovered from different locations. (RR, Vol. 6, 24). These lists were personally prepared by Ms. Reed and Deputy Mellas. (RR, Vol. 6, 24). Defense exhibit 2 is a list of all furniture recovered from Appellant's home, Appellant's mother's house and from the home of Aaron Wilde. Defense exhibit 3 is a list of all furniture recovered from 1249 Templin Rd. The values on the lists are for insurance purposes and Defense Exhibit 2 and Defense Exhibit 3 have totals of $10,794.22 and $13,700 respectively.

## SUMMARY OF THE ARGUMENT

The Fifth Amendment to U.S. Constitution guarantees the right of a criminal defendant not to be compelled to give witness against himself as does Section 10 of the Texas Constitution. The U.S. Supreme Court recognized in *Miranda* that the environment created by the State during in custody interrogation of Defendant is inherently compelling and in recognition of this the Court announced the substance

12

of a warning to be given to the defendant prior to any in custody interrogation. The intent of the warning is to apprise the Defendant of his rights and neutralize the inherent compelling forces of in-custody interrogation.

The Texas Code of Criminal Procedure is intended as the mechanism to ensure that a criminal defendant's rights under the U.S. Constitution and Texas Constitution are recognized. When the State violates the TCCP the defendant's constitutional rights are infringed upon and these infringements may apply subtlety compelling forces on the defendant to compel him to give a statement against himself. Under these infringements upon Appellant's Constitutional rights the State improperly compelled Appellant to give a statement against himself. The *Miranda* warning given to Appellant is insufficient to cure this improper compulsion by the State and therefore Appellant's statement given on November 26th, 2013 is involuntary and should be suppressed.

Section 15.17 of the Texas Code of Criminal Procedure was violated when Mr. Serrano was taken before the magistrate and because his recorded statement given on November 26, 2013 was given under the taint of State compulsion, through violations of TCCP, the statement should be suppressed. Appellant's bail amount violated the Texas Constitution §13 and Texas Code of Criminal Procedure §17.033 and §17.15 and because Appellant's statement was given under the influence of these State violations of TCCP and Texas Constitution it should be suppressed. The

13

compelling affect on Appellant due to the totality of these violations should also be considered. The totality of these improper compelling forces by State violations of the Texas Code of Criminal Procedure in addition to the inherently compelling nature of the interrogation environment overwhelmed the Appellant's free will and made his statement involuntary, and for these reasons Appellant's statement should be suppressed.

## ARGUMENT

The Fifth Amendment to U.S. Constitution and Section 10 of the Texas Constitution guarantee the right of a criminal defendant not to be compelled to give witness against himself. The U.S. Supreme Court recognized in *Miranda* that the environment created by the State during in custody interrogation of Defendant is inherently compelling and in recognition of this the Court announced the substance of a warning to be given to the defendant prior to any in custody interrogation. *Miranda v. Arizona* , 384 U.S. 436, at 457-458 . The intent of the warning is to apprise the Defendant of his rights and neutralize the inherent compelling forces of in-custody interrogation, thus satisfying the Constitutional rights of the defendant. A statement given by a defendant while in interrogation must be given voluntarily and after a knowing and intelligent waiver of his rights after being given the *Miranda* warning. A confession obtained by compulsion must be excluded whatever may have been the character of the compulsion, and whether the compulsion was applied in a

14

judicial proceeding or otherwise. *Miranda v. Arizona* at 462, citing *Bram v. U.S.*, 168 U.S. 532.

"The rule is not that, in order to render a statement admissible, the proof must be adequate to establish that the particular communications contained in a statement were voluntarily made, but it must be sufficient to establish that the making of the statement was voluntary; that is to say, that, from the causes which the law treats as legally sufficient to engender in the mind of the accused hope or fear in respect to the crime charged, the accused was not involuntarily impelled to make a statement when but for the improper influences he would have remained silent. * * *" *Miranda* at 462, citing *Bram v. U.S.,* 168 U.S., at 549.

State violations of Article 15.17, 17.033 and 17.15 of the Texas Code of Criminal Procedure and Section 10 and 13 of the Texas Constitution had the effect of creating an improper compelling environment for interrogation of the Appellant. Appellant was subjected to this compelling environment and under this improper State compulsion made a statement against himself. The *Miranda* warning given to Appellant does not have the capacity to neutralize this improper State compulsion and therefore Appellant's waiver of his rights after given the Miranda warning on November 26th, 2013 should be found ineffective and Appellant's statement involuntary and suppressed. But for the State's improper influences the Appellant would have remained silent and not made a statement against himself.

15

# TEXAS CODE OF CRIMINAL PROCEDURE ART. 15.17

Article 15.17 of the Texas Code of Criminal Procedure is titled "Duties of Arresting Officer and Magistrate" and the article outlines legal process for informing a person that has been arrested of the charges against him and his legal rights. The first duty specified is that a person making an arrest or person having custody of an arrested individual shall without unnecessary delay, but not later than 48 hours after arrest, take the person arrested before a magistrate for the warnings described by the Article. The warnings required by this Article echo a defendant's *Miranda* warnings and include: his right to retain counsel, right to remain silent, right to have his attorney present during any interview with peace officers or attorney for State, right to terminate interview at any time, that he is not required to make a statement, any statement will be used against him in Court, and his right to an examining trial.

The article also requires the magistrate to inform the individual of his right to request the appointment of counsel if he cannot afford an attorney and of the procedures for requesting appointment of counsel. If the magistrate is not authorized to appoint counsel, the magistrate shall without unnecessary delay, but not later than 24 hours after the person arrested requests counsel, transmit the request to Court's designee for appointment of counsel to the defendant. Finally, the magistrate determines if the person is eligible for bail and if so the magistrate sets the bail. For

suppression of Appellant's statement the burden is on him to prove that the delay in bringing him before the magistrate was unreasonable and to prove a causal connection between Appellant's confession and delay in taking him before a magistrate. *Ex parte Stansbery*, 702 S.W.2d 643, 647 (Tex.Crim.App.1986).

## I.

Mr. Serrano was arrested on a Wednesday, November 20th, 2013; at approximately nine p.m.. He was arrested without an arrest warrant while the sheriff's office executed a search warrant at his home. Mr. Serrano was held in custody for the following 60 plus hours before being taken before a magistrate. Even though Thursday and Friday after the arrest were work days, Mr. Serrano was not taken before a magistrate until November 23rd, 2013 (Saturday) at ten a.m.. This is over 60 hours after Appellant's arrest without a warrant. This delay exceeds the 48 hours specified in the Article and is presumptively unreasonable and it is for the State to prove this delay not unreasonable.

Article 15.17 requires the defendant's appointment request to be sent without undue delay but not later than 24 hours, after the request has been made, to the a person authorized to make appointments of defense counsel. This mandate of Article 15.17 addresses the reality that State prosecution against the defendant has begun and the defendant needs representation without further delay and with all practical haste. Despite the mandate of Article 15.17 that the appointment request is to be

17

transmitted within 24 hours the request for an attorney by Appellant was not transmitted to the person authorized to make appointments until November 25th, 2013 approximately 48 hours after making the request.

The effect of these two State violations of the simple mandates of TCCP 15.17 had the effect of delaying appointment of Appellant's counsel until six days after his arrest. The notice of appointment was not transmitted to Ms. McKillop's office until November 26, 2013 at 11:00 a.m.. These violations effectively denied Appellant counsel for 72 hours, which turned out to be extremely critical to Appellant's defense. If the State adhered to the mandates of Article 15.17 then it is reasonable to assume that Appellant could have appeared before the magistrate the next day November 21, 2013. It is also reasonable that the appointment of counsel could have been made and transmitted to Ms. McKillop by end of business on November 22nd, 2013 or at the latest on November 25th, 2013. Ms. McKillop's office is approximately 200 yards from the county jail where Appellant was in custody. If Ms. McKillop would have received this notice timely then she would likely visited with Appellant prior to his confession on November 26th, 2013 and Appellant would not have made the confession on November 26th, 2013. This unreasonable delay had the effect of depriving Appellant of counsel, and with counsel Appellant would not have made his confession.

II.

In *Pecina v. State*, Justice Alcala, joined by Justice Johnson, wrote to identify the confusion a defendant experiences when asked whether he wants an attorney to represent him and the defendant answers affirmatively, yet no attorney is provided and typically no explanation is given as to when or who the defendant will have to represent him. *Pecina v. State,* 361 S.W.3d 68 (Texas Crim. App. 2012). Article 15.17 requires the magistrate to inform in clear language the person arrested of the accusation against him, his right to remain silent, right to counsel, rights during State questioning , and right to request the appointment of legal counsel.

Appellant requested an attorney when he appeared before a magistrate on November 23rd, 2013. (CR, 2). It is completely reasonable to assume that Appellant is unaware of the distinction between trial counsel and interrogation counsel. Appellant in this case is in the same confusing situation as identified by Justice Alcala in *Pecina. Id* at 83. On November 23rd, 2013 Appellant requested an attorney and by November 26th, 2013, 72 hours later Appellant was still not aware who his attorney was. This is evidenced by Appellant's statement during interrogation when asked by Detective Bloom who his attorney is the Appellant responds that he does not have one. (SE 87, t -40:35). Some type of explanation was due to Appellant from magistrate because of the presumptively unreasonable delay in taking Appellant before the magistrate. Additionally, the request for appointment is required to be

19

transmitted within 24 hours, and in this case it was not transmitted until 48 hours after the request was made. There is no record of the magistrate explaining to Appellant that due to delays by the State that Appellant's appointment will likely also be delayed. Appellant should have been given notice of how much longer it would be before he had knowledge of who is attorney was.

The State clearly violated Article 15.17 of TCCP multiple times and made no effort to correct their violations. In fact the State only compounded their errors and their affect on Appellant, in their refusal to address and correct their mistakes in the prosecution of Appellant. Because of these blatant violations of Article 15.17 Appellant requests a harm analysis under Texas Rules of Appellate Procedure 44.2(b). Id. at 82- 83. The Appellant was without knowledge of who his counsel was at the time of his interrogation because of the blatant violations of Article 15.17 by the State and the magistrate's failure to explain these violations and the effect of these violations on Appellant and his access to an attorney. At the time of Appellant's interrogation he did not even know if he had an attorney or who it was and without this knowledge Appellant's waiver of his right to speak with his attorney after reads his *Miranda* warning was unknowing and thus invalid.

### III.

Article 15.17 requires the magistrate to set a bail amount for the defendant if he is eligible for a bail. Section 10 of the Texas Constitution guarantees every

20

criminal defendant the right to be heard by himself, counsel, or both. Previously the U.S. Supreme Court held in *Michigan v. Jackson* that the defendant's request for counsel before the magistrate made any subsequent waiver of defendant's rights to give a statement presumptively invalid. *Michigan v. Jackson*, 475 U.S. 625 (1986). This precedent was overruled by the U.S. Supreme Court in *Montejo v. Louisiana*, 556 U.S. 778 (2009). The *Jackson* Court decided that a request for counsel at an arraignment should be treated as an invocation of the Sixth Amendment right to counsel "at every critical stage of the prosecution," despite doubt that defendants "actually inten[d] their request for counsel to encompass representation during any further questioning," *Jackson* at 632–633.

Appellant argues not under the U.S. Constitution but under Section 10 of the Texas Constitution that a defendant is entitled to representation at all critical stages of the State proceedings against him. When a defendant appears before a magistrate, State prosecution against him has begun and critical stages of the proceedings against him can occur right then or any time after. Appearing before a magistrate can be routine but could be a critical stage of the proceedings depending on the circumstances when a defendant is before the magistrate. Appellant argues that the Magistrate made the hearing a critical stage requiring Appellant's representation under Section 10 of the Texas Constitution when his bail was set unconstitutionally high in the amount of $200,000, for a third degree felony.

21

If bail for Appellant is set according to some fixed table of amounts for a specified degree of offense, as done in some more populous Counties in Texas, then no representation of defendant should be required by Section 10 of the Texas Constitution when the Appellant appears before the magistrate. However, if the magistrate desires to exercise her discretion and set a higher bail amount than the amount specified then the defendant should be represented by counsel before his bail is set above the specified amount. The State is represented when the defendant is taken before the magistrate and to proceed against the defendant while he has no counsel is to put defendant at a disadvantage to the State and at their mercy regarding one of his Constitutional rights to be free from excessive bail. Lack of representation when Appellant's bail was set unconstitutionally high violated Section 10 of the Texas Constitution regarding Appellant's right to be heard by counsel.

These violations of Article 15.17 by the State and their failure to remedy them created an environment of compulsion that the Appellant was subjected to when he made a statement against himself. If Article 15.17 had been adhered to then Appellant would not have been subjected to this improper State compulsion. Appellant's statement was made while subjected to this improperly compelling environment and therefore his statement should be deemed involuntary and suppressed.

## TEXAS CODE OF CRIMNAL PROCEDURE ART. 17

The State also violated TCCP Art. 17.033, 17.15, and §13 of the Texas Constitution when the Appellant was brought before the magistrate. These violations added to the compelling forces against the Appellant to make a statement against himself and therefore Appellant's statement given on November 26th, 2013 was involuntary and should be suppressed.

### I.

Texas Code of Criminal Procedure Article 17.033(b) dictates that a person arrested without a warrant for an alleged felony whom has not been taken before a magistrate must be released on bond, in an amount not to exceed $10,000 within 48 hours of their arrest. Furthermore, the Article 17.033(b) states that if the person cannot obtain a surety for the bond or is unable to deposit money in the amount of the bond then they must be released on a personal bond. This Article of the TCCP is the one of the mechanisms to ensure a person's Fourth Amendment rights under the U.S. Constitution and Section 9 of the Texas Constitution to be free from unreasonable seizures of the person.

Appellant was arrested at 9 p.m. on November 20th, 2013 at his home and without a warrant. Appellant was not taken before a magistrate within the required 48 hours. No application was filed by the State under Article 17.033(c). Therefore, Appellant should have been released on November 22nd, 2013 at 9 p.m. on $10,000

bail or a personal recognizance bond if the Appellant could not afford $10,000 bail. Appellant was not released on the evening of November 22nd at 9 p.m. and therefore his continued detention was unreasonable. The magistrate had the opportunity to correct this violation by setting Appellant's bond at $10,000 or a personal recognizance bond when the Appellant was brought before the magistrate on November 23rd, 2013. However, this was not the case and the magistrate ignored her violations of the TCCP and improperly set Appellant's bail at $200,000.

On November 25th, 2013 the magistrate attempts to paper over this violation of TCCP Art. 17.033, of not releasing Appellant, by issuing an untimely arrest warrant for Appellant on November 25th. (Included in Appellant's Appendix). The Justice of the Peace Precinct One stamp on this document is directly over the date it was signed by the magistrate. The magistrate in this case had several opportunities to correct the violations of the TCCP but instead of correcting them she issued an untimely arrest warrant in an attempt to retroactively correct her mistakes. The issuance of this warrant after the fact is evidence that the State had knowledge and intent to violate the Texas Code of Criminal Procedure and thus violate Appellant's Constitutional rights.

Appellant's statement was given on November 26th, 2013, four days after he should have been released from custody on a $10,000 bail or a personal recognizance bond. If Appellant was released when he should have been, as specified by the TCCP

24

Art. 17.033(b), then he would not have been in State custody on November 26th, 2013 and would likely not have made a statement against himself if not compelled by his improper detention. Because Appellant's statement was given under improper State compulsion, affected by an illegal detention, it should be suppressed.

## II.

Section thirteen of Texas Constitution states in pertinent part, "Excessive bail shall not be required...". Texas Code of Criminal Procedure Article 17.15 lists the factors to be considered when setting the amount of bail. Article 17.15 states:

> RULES FOR FIXING AMOUNT OF BAIL
> The amount of bail to be required in any case is to be regulated by the court, judge, magistrate or officer taking the bail; they are to be governed in the exercise of this discretion by the Constitution and by the following rules:
> 1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
> 2. The power to require bail is not to be so used as to make it an instrument of oppression.
> 3. The nature of the offense and the circumstances under which it was committed are to be considered.
> 4. The ability to make bail is to be regarded, and proof may be taken upon this point.
> 5. The future safety of a victim of the alleged offense and the community shall be considered.

Article 17.15 is the exclusive State guideline for setting a Constitutional bail amount for a criminal defendant in the State of Texas and it is within this framework

25

that the magistrate must exercise their discretion and not set an arbitrary bail amount. Please consider the bail amount of Appellant in light of Texas Court of Criminal Appeals case *Ludwig v. State*, where a capital murder suspect had his bail reduced from one million to a reasonable amount of fifty thousand *.Ludwig v. State*, 812 S.W. 2d 323, at 325 (Texas Cr. App. 1991). Compelling a defendant to give a statement against himself by setting an excessive bail is strictly prohibited by the Article 17.15(2).

Article 17.15 defines two legitimate state interests to be considered when setting a defendant's bail. First, that bail should be sufficiently high to give reasonable assurance that the undertaking will be complied with. Second, consider the future safety of the victim of the crime. In setting the bail amount for reasonable assurance of compliance factors considered are: the defendant's ties to the community, the defendant's resources that he may pose a flight risk, and previous behavior of defendant on bail. Defendant had strong ties to the community which included the Appellant residing in the community for most of his life, his mother and father still lived in the community, and Appellant lived in a home owned by his father located in the community. The defendant's resources that indicate he may be a flight risk were proven non-existent by review of Appellant's affidavit of income given when requesting attorney. (CR, 2). Appellant had a history of felony DUIs in the ten years preceding 2013. In 2003 Appellant pled for 2 years to a felony DUI

26

and made all appearances. In 2006 Appellant had another felony DUI charge and in this case Appellant went off his bond and was located within a week and placed in custody. From review of the record it appears that Appellant was given a $10,000 bond after his arrest and he made all appeared for the rest of the proceedings.

The victim in this case was a Furniture store which had furniture stolen from their warehouse. The only violent crime found on Appellant's record is a robbery charge from 1994 when Appellant was twenty years old. There is no evidence that Appellant posed an additional danger to the victims in this case. This was strictly a property crime and level of danger to the victim seems minimal when considered side by side with *Ludwig* where a capital murder suspect had his bail set at $50,000. Next to be considered is the circumstances of the crime. The facts in this case establish an ordinary property theft where the Defendant went to a warehouse at night to steal furniture while no employees were present. This crime is lacking in the horrific details that are present in so many crimes against persons and which make a crime more heinous and of a higher degree.

Another consideration is the Appellant's ability to make bail. From review of Appellant's affidavit it appears that he would have little ability to make any bail amount. (CR, 2). In the instant case the Appellant had his bond amount lowered to $50,000 on December 19th, 2013 by agreement of the State's attorney and Appellant's attorney. On March 5th, 2014 a capias was issued and Appellant was

arrested and his bond amount was increased to $60,000. Appellant could not make the $200,000 bail but was able to post bail in the amounts of $50,000 and $60,000.

Appellant posed the same risk to the community on December 20th, 2013 after making his $50,000 bond as he did when he originally had his bail set at $200,000 on November 23rd, 2013. Even though Appellant was rearrested on March 5th, 2014 the bail amount of $60,000 was reasonably high to secure Appellant's attendance at the rest of the proceedings. Appellant argues that bail in this case should have been reasonably set initially at a maximum of $60,000 when Appellant appeared before the magistrate on November 23rd, 2013. There is a $140,000 difference between the original bail set for Appellant and the $60,000 amount considered reasonable on December 17th, 2013. What factors were considered and determinative to the State to set Appellant's initial bail at an amount in excess of three times an amount determined reasonable by State's Attorney less than a month later?

The final consideration of Article 17.15 when setting the bail amount of a defendant is that the power to require bail is not to be used as an instrument of oppression. TCCP 17.15(2). At the time Appellant was arrested only a portion of the reported stolen furniture was recovered from Appellant's home and his mother's home. At the time of his arrest on November 20th, 2013 there were co-defendants that had not yet been identified. Appellant argues that his bond was set excessively high as an instrument of oppression against Appellant so that he would provide

28

information to detectives and make a statement against himself. This is directly contrary to the mandate of Article 17.15(2) that bail may not be used as an instrument of oppression. It is not a legitimate state interest to use bail to influence a defendant to make a statement against himself.

There is some evidence of this improper State motive to compel a confession from Appellant as evidenced by statements of investigating officers and State's position on bail amount. The highest bail amount ever set for Appellant in his previous contact with the criminal justice system was $20,000 for a third degree felony DUI. Appellant was taken before the magistrate on November 23rd, 2013 and his bail was set at $200,000. Review of the information filed against Appellant indicates the State initially had intentions of requesting a bail amount of $125,000, but this amount is struck through with $200,000 written above it. (CR, 7).There is no record of justification given by magistrate for the bail amount of $200,000.

Appellant was taken to the Sheriff's Office across the street from the jail on November 26th, 2013 for interrogation while in custody under the bail amount of $200,000. At this interrogation the amount of the bail is clearly on Appellant's mind and he addresses the amount of $200,000 with the interrogation officer Ibarra. (SE 87, t- 26:50). Ibarra's response to Appellant's statement is. "tell me why you have that (high bail amount) ... there is more than this than you are telling me." (SE 87, t-26:50). This is the first statement by the State that gives the inference that a portion

29

of Appellant's bail amount is intended to pressure him into making a statement against himself or other co-defendants. Appellant is uncooperative in the first half of the interview and gives a statement that does not inculpate himself.

The lead investigating officer, Deputy Mellas, enters the interrogation room at about 35 minutes into the interrogation. There is a brief argument between Deputy Mellas and Appellant over the probable cause affidavit taken from Appellant that was previously given to Appellant by Deputy Mellas by mistake. At time 36:20 in the interrogation Deputy Mellas confronts Appellant that he is not going to be cooperative and that he already has witnesses against him. Deputy Mellas then states to Appellant," [Y]our not going to admit to that…. you are not here by mistake…. your bond is not set by… your $200,000 bond is not set by mistake… so you're not helping yourself by telling me you are trying … either you will or you won't". (SE 87, t- 36:30- 37:00). This statement by Deputy Mellas also gives the inference that a portion of Appellant's bond was set to compel him to make a statement against himself or co-defendants. The Appellant could also reasonably infer form this statement that his bail amount was set to compel a statement from him and that if he does not make a statement then the bail amount will remain $200,000.

Finally, the State's Attorney agreed to a bail amount reduction to $50,000 on December 17th, 2013. A month after requesting an initial bail amount of $200,000 the State's Attorney agreed for bail to be reduced to just twenty five percent of the

30

original amount, being $50,000. There is no indication of what circumstances changed to prompt the State's agreement to this lower amount. All of the considerations under TCCP 17.15 for assessing bail seem to be identical on December 19th, 2013 and November 23rd, 2013. The only circumstance that had changed between these dates was that Appellant had made a statement against himself on November 26th, 2013 while in custody on $200,000 bail and Appellant's defense counsel was now actively participating in the case.

These statements and circumstances indicate an improper ulterior State motive in setting the bail amount of Appellant being that to compel a confession against himself. This is an improper State motive in setting bail and is explicitly prohibited by Article 17.15(2) of TCCP. Additionally, if bail is set excessively high contrary to Article 17.15 then Appellant's right to be free from excessive bail has been violated as guaranteed to Appellant by Section 13 Texas Constitution. Bail in the amount of $200,000 was an abuse of discretion by the magistrate and the statement given by Appellant while under the compulsion of this oppressive bail amount was involuntary. Therefore, Appellant's statement should be suppressed as given under taint of improper State compulsion.

## CONCLUSION

Considered individually each State violation of Texas Code of Criminal Procedure had a compelling influence on Appellant to make a statement against himself. It is under the influence of these violations that the Appellant made his statement on November 26th, 2013. The *Miranda* warning given to Appellant prior to him making a statement was insufficient to address State compulsion upon Appellant caused by State violations of the Texas Code of Criminal Procedure. Therefore, Appellant's waiver of his rights after read the *Miranda* warning was ineffective and Appellant's statement was not voluntarily given and should be suppressed.

The totality of the circumstance surrounding Appellant's statement evidence a compelling interrogation environment orchestrated by State violations of the Texas Code of Criminal Procedure, and that goes beyond permissible State compulsion anticipated by *Miranda*. As stated in *Bram v. U.S.* the rule is not whether the communication is voluntary but it must be that the making of the statement was voluntary. The Appellant was involuntarily compelled to make a statement against himself and but for this improper State compulsion the Appellant would have remained silent.

For the foregoing reasons Appellant humbly requests that his statement given on November 26th, 2013 be suppressed and inadmissible against Appellant.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant Mark A. Serrano respectfully requests that this Court REVERSE the judgment of the Trial Court and REMAND to the Trial Court for a new hearing where Appellant's statement is suppressed.

Respectfully Submitted,

**Randol L. Stout**
202 W Beauregard
SanAngelo, Texas 76903
(325) 658-6816
(325) 658-6114– Telecopier

Texas Bar No. 19331800
Rls2700@gmail.com

**ATTORNEY FOR APPELLANT**

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of TEX. R. APP. P. 9.4(i)(2)(B) because it contains 6,650 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1). Pursuant to TEX. R. APP. P. 9.4(i)(3), the undersigned relies on the word count function of the word processing program utilized to prepare this brief: Microsoft Word, Windows Professional 7.

2. This brief complies with the typeface requirements of TEX. R. APP. P. 9.4(e) and the type style requirements of TEX. R. APP. P. 9.4(e) because this brief has been prepared in a conventional typeface (Times New Roman type style) in 14-point font.

*/S/ Randol L. Stout*
Randol L. Stout
Attorney for Defendant-Appellant
Dated: April 6, 2015

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this the 8th day of May, 2015, he has served b y p e r s o n a l l y  d e l i v e r y on counsel for Appellee, Mr. John Best, a true and correct copy of the foregoing instrument in accordance with Texas Rule of Appellate Procedure 9.5.

A copy of this instrument has been mailed to Appellant, Mark A. Serrano, on May 8th, 2015 at the Texas Department of Corrections Middleton Unit in Abilene, Texas.

Served on the Following Parties:

State's Attorney – John Best
john.best@co.tom-green.tx.us
Office of the 51st District
Attorney 124 W. Beauregard
San Angelo, Texas 76903

Appellant- Mark A. Serrano
TDC- Middleton Unit
13055 FM 3522,
Abilene, TX 79601

_____
Randol L. Stout
Attorney for Appellant